**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RODNEY FERRER,

                        Plaintiff,

      - v -                                        Civ. No. 9:14-CV-1370
                                                             (GTS/DJS)

STEVEN RACETTE, *et al.*,

                        Defendants.

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| OFFICE OF JESSICA M. GORMAN<br>*Attorney for Plaintiff*<br>74 Chapel Street, 2d Floor<br>Albany, N.Y. 12207 | JESSICA M. GORMAN, ESQ. |
| HON. ERIC T. SCHNEIDERMAN<br>Attorney General of the State of New York<br>*Attorney for Defendants Racette, Kelly,*<br>*Goodman, Waite, and Jenkins*<br>The Capitol<br>Albany, N.Y. 12224 | CATHY Y. SHEEHAN, ESQ.<br>ORIANA L. CARRAVETTA, ESQ.<br>Assistant Attorney Generals |
| LAMARCHE, SAFRANKO LAW FIRM<br>*Attorney for Defendant Frazier*<br>1539 Crescent Road<br>P.O. Box 5437<br>Clifton Park, N.Y. 12065 | ANDREW R. SAFRANKO, ESQ. |
| HARRIS, CONWAY LAW FIRM<br>*Attorney for Defendant Livermore*<br>The Patroon Building<br>5 Clinton Square<br>Albany, N.Y. 12207 | RYAN T. DONOVAN, ESQ. |

LIPPES MATHIAS WEXLER FRIEDMAN LLP     JEFFREY P. MANS, ESQ.
*Attorney for Defendants and Counter Claimants*
*Beecher, Burch, and McClenning*
54 State Street, Suite 1001
Albany, N.Y. 12207

**DANIEL J. STEWART**
**UNITED STATES MAGISTRATE JUDGE**

## DECISION AND ORDER

Defendants seek disclosure of the Plaintiff's mental health records. Dkt. Nos. 62, 73, 74, 75, 76, & 77 For the reasons that follow, the Defendants' disclosure request is **denied in part and granted in part**.

## I. BACKGROUND

On November 12, 2014, Plaintiff, by his counsel, filed a Complaint against several employees of the Department of Corrections and Community Supervision ("DOCCS") arising out of various incidents which allegedly occurred at the Great Meadow Correctional Facility, culminating in an allegedly unlawful and wrongful assault of Plaintiff on November 15, 2011. Dkt. No. 1, Compl., at ¶¶ 19-67. Plaintiff alleges that as a result of the misconduct of the Defendants, he was "seriously injured." *Id*. at ¶¶ 88, 93, & 105.

The Defendants, who are represented by various counsel, answered the Complaint and denied the allegations. Dkt. No. 34, 38, 39, & 40. Some of the Defendants brought counter-claims against the Plaintiff for injuries they allegedly received during the November 2011 altercation. Dkt. No. 34. On October 28, 2015, the undersigned held an Initial Pretrial Scheduling Conference, after which I issued a Uniform Pretrial Scheduling Order, which, *inter*

*alia*, called for discovery to be completed on June 17, 2016. Dkt. No. 45.[1] On May 6, 2016, Plaintiff's counsel submitted a Letter-Motion to the Court identifying, among other things, a discovery issue with regard to Plaintiff's mental health records. Dkt. No. 58. At a subsequent telephone conference with the parties, the Court requested further briefing on this specific issue. Dkt. No. 68, Text Order dated June 9, 2016. That additional briefing was received by the Court on June 16 and 17, 2016, Dkt. Nos. 73, 74, 76, & 77, and was responded to by Plaintiff's counsel on July 23, 2016. Dkt. No. 80.

## II. DISCUSSION

The Defendants assert that the Plaintiff's mental health records are relevant and discoverable for numerous reasons. According to counsel for Defendant Livermore, the records are relevant to the Plaintiff's state of mind, his recollection, and are needed to determine the appropriate measure of damages. Dkt. No. 62. Defendant Livermore alleges that Plaintiff was the one who initiated force in this case and that his mental health records may speak to his propensity to use such force or violence. *Id*. In addition, counsel claims that the mental health records may be relevant to the claim for emotional damages. *Id*. Finally, counsel notes that according to the Complaint, Plaintiff complained to officials in the behavioral health unit ("BHU") regarding harassment by staff, and Plaintiff alleges that the November 15, 2011 incident was in retaliation for the Plaintiff's complaints. Therefore, insofar as the mental health records may or may not document this prior complaint, they may be relevant to the Plaintiff's

---

[1] Recently, the Court has extended the discovery deadline to December 30, 2016. Dkt. No. 91.

credibility. *Id.*

Counsel for Defendants Beecher, Birch, and McClenning has taken a slightly different approach, and limits the discovery request to an *in camera* review of the Plaintiff's mental health records for (1) any claim that he was retaliated against, and (2) any factual information provided by him to his counselors regarding the November 15, 2011 use of force incident at Great Meadow. Dkt. No. 74. Counsel asserts that because Plaintiff reported incidents of harassment, he has waived any privilege regarding those statements or, alternatively, that such statements were not provided for treatment or evaluation purposes and thus are not privileged. *Id.* More specifically, Counsel asserts that statements made by Plaintiff to his doctors regarding the November 15, 2011 assault were made for reporting misconduct, and not for treatment, and are therefore not privileged. *Id.* Counsel for Defendants Fraizer, Goodman, Jenkins, Kelly, Racette, and Waite joins in this position. Dkt. Nos. 76 & 77.

In *Jaffee v. Redmond*, the Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. 1, 15 (1996). The Court in *Jaffee* also recognized the scope of the psychotherapist-patient privilege to include "confidential communications made to licensed social workers in the course of psychotherapy." *Jaffee v. Redmond*, 518 U.S. at 15. Thus, the privilege protects against compelled testimony concerning conversations between the patient and the licensed therapist, as well as compelled disclosure of notes taken during their counseling sessions. *Id.* at 18. According to the Supreme Court, the psychotherapist-patient privilege "is 'rooted in the

imperative need for confidence and trust.'" *Id.* at 10 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). As the Court reasoned, "the mere possibility of disclosure [of confidential communications made during counseling sessions] may impede development of the confidential relationship necessary for successful treatment'" of the sensitive issues "for which individuals consult psychotherapists." *Id*.

The fact that Plaintiff may have said something in his counseling sessions that might be relevant to what exactly occurred on November 15, 2011, or that there might be a diagnosis in the records to support the Defendants' claim that Plaintiff was the instigator of this violent interaction, is of no significance for the application of the privilege. The Supreme Court specifically rejected recognizing only a qualified privilege that would turn upon the importance of the information sought to the lawsuit. *Jaffee v. Redmond*, 518 U.S. at 17 (noting that making the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of a privilege). Therefore, there is no legal basis for a review of the Plaintiff's mental health records after the November 15, 2011 incident, and the Defendants' request for such a review is **denied**. *See In re Sims*, 534 F.3d 117 (2d Cir. 2008) (holding that the defendants' claim that an inmate-plaintiff started the altercation due to his mental health problems provided no basis for disclosure of the inmate's psychiatric records).

Next Counsel for Defendants argue that there has been a waiver in this case which makes the sought after records discoverable. "It is well settled that a party waives his doctor-patient privilege when he puts his medical condition into issue." *Ottawa Office Integration Inc. v. FTF*

-5-

*Bus. Sys., Inc.*, 132 F. Supp. 2d 215, 220 (S.D.N.Y.2001); *see also In re Sims*, 534 F.3d at 132 & 134. However, in *In re Sims*, the Second Circuit instructed "that a plaintiff does not forfeit his psychotherapist-patient privilege merely by asserting a claim for injuries that do not include emotional damage" and "a plaintiff does not forfeit that privilege by merely stating that he suffers from a condition such as depression or anxiety for which he does not seek damages." *In re Sims*, 534 F.3d at 134. The Circuit Court further held that "a plaintiff may withdraw or formally abandon all claims for emotional distress in order to avoid forfeiting his psychotherapist-patient privilege." *Id.* Thus, a plaintiff may continue to protect the privacy of his mental health records, but only at the expense of his mental health claims that go beyond garden variety emotional distress. *See id.* at 142 (finding that the plaintiff withdrew "any claim to damages for mental injury or any non-garden-variety emotional injury," and was therefore not required to disclose his mental health records); *see also Rich v. Tee Bar Corp.*, 2013 WL 5442277, at *10-11 (N.D.N.Y. Sept. 27, 2013).

In the present case, Plaintiff's counsel correctly notes that the Plaintiff does not waive his privilege by making a claim for garden variety emotional trauma, and indeed goes farther and states that "[i]n the instant case, Plaintiff makes no claims for emotional damages. . . ." Dkt. No 80 at p. 2. Thus, the Defendants' claim of waiver is properly rejected. *Ruhlmann v. Ulster County Dep't of Soc. Servs.*, 194 F.R.D. 445, 450-51 (N.D.N.Y. 2000).

Defendants' final point, however, has merit. In his Complaint, Plaintiff alleges that in or about September 2011, while en route to programming and while in an elevator at the Great Meadow Correctional Facility, he was assaulted and digitally penetrated by Defendant Jenkins.

Compl. at ¶¶ 31-32. When he then arrived at programing, Plaintiff orally informed the BHU Director and a Senior Corrections Counselor of the incident. *Id.* at ¶ 33. He also wrote to Defendant Deputy Superintendent Kelly about the assault, and sent copies to Defendant Racette, Goodman "and others." *Id.* at ¶¶ 34-35. It is not clear based upon the record before the Court whether the letter to Kelly has been produced, or whether the Senior Corrections Counselor reported the claimed misconduct. However, the Court concludes that any record of this incident may be relevant to the Plaintiff's claim of retaliation. In addition, it is not evident that the report to the BHU Director was made by Plaintiff for purposes of reporting misconduct, or for treatment, or both. Based upon that fact, and mindful of the sensitive nature of mental health records, the Court agrees to review the Plaintiff's records *in camera* for the sole purpose of determining if the aforesaid complaint was recorded in Plaintiff's mental health records and what, if anything, was noted to have been done. Based upon that review the Court will make a determination as to whether it should be disclosed. The records in question will be limited from August 15, 2011 to November 15, 2011. Plaintiff's Counsel shall be responsible for the production of the aforesaid documents to the Court's Chambers, and it is requested that such production occur no later than September 30, 2016. For the reasons stated herein, it is hereby

**ORDERED**, that the Defendants' request for production of Plaintiff's mental health records is hereby **denied in part and granted in part** in that the Court will conduct an *in camera* review of the mental health records, spanning from August 15, 2011 through November 15, 2011, for the limited purpose of determining whether the records relate to Plaintiff's complaint/report of alleged abuse by staff at the Great Meadow Correctional Facility.

**IT IS SO ORDERED**.

Date: September 19, 2016
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge