UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RODNEY FERRER,

                              Plaintiff,

v.                                                              9:14-CV-1370
                                                                (GTS/DJS)
STEVEN RACETTE, Former Superintendent,[1]
CHARLES KELLY, Deputy Superintendent of
Security, CRAIG GOODMAN, Captain, ANDREW
FRAZIER, Sergeant, SERGEANT LIVERMORE,
Sergeant, BRIAN SCHLOGL, Corrections Officer,
GREGORY BEECHER, Corrections Officer, ERIC
MORIN, Corrections Officer, JEREMY BURCH,
Corrections Officer, DANIEL MCCLENNING,
Corrections Officer, N. WAITE, Corrections
Officer, JOSHUA JENKINS, Corrections Officer,

                              Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

LAW OFFICE OF JESSICA M. GORMAN      JESSICA M. GORMAN, ESQ.
   Counsel for Plaintiff
P.O. Box 706
Albany, NY 12201

HON. ERIC T. SCHNEIDERMAN               LOUIS JIM, ESQ.
Attorney General of the State of New York     Assistant Attorney General
   Counsel for Defendants Kelly, Goodman
   Waite, and Jenkins
The Capitol
Albany, NY 12224-0341

LIPPES MATHIAS WEXLER FRIEDMAN LLP    JEFFERY P. MANS, ESQ.
   Counsel for Defendants Beecher, Burch,
   and McClenning
54 State Street, Suite 1001
Albany, NY 12207

---

[1]      The Court notes that it granted a stipulated motion to dismiss Steven Racette as a
Defendant in this action on June 21, 2017.  (Dkt. No. 125.)

GLENN T. SUDDABY, Chief United States District Judge

**<ins>DECISION and ORDER</ins>**

Currently before the Court, in this prisoner civil rights action filed by Rodney Ferrer

("Plaintiff") against the eleven above-captioned employees of Great Meadow Correctional

Facility ("GMCF") in Comstock, New York ("Defendants"), are the following three motions: (1)

Plaintiff's motion for partial summary judgment against Defendants Beecher, Burch, and

McClenning; (2) Defendants Goodman, Kelly, Waite, and Jenkins' motion for summary

judgment; and (3) Defendants Beecher, Burch, and McClenning's motion for partial summary

judgment. (Dkt. Nos. 126, 127, 128.) The Court notes that Plaintiff's claims against

Defendant's Livermore, Frazier, and Morin are not at issue in the three above-referenced

motions. In addition, default judgment on liability was entered against Defendant Schlogl on

November 28, 2016. (Dkt. Nos. 105, 106.) For the reasons set forth below, Plaintiff's motion

for partial summary judgment is denied; Defendants Goodman, Kelly, Waite, and Jenkins'

motion for summary judgment is granted in part and denied in part; and Defendants Beecher,

Burch, and McClenning's motion for partial summary judgment is denied.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, Plaintiff's Complaint asserts three causes of action. First, Plaintiff alleges that

Defendants Frazier, Schlogl, Beecher, Morin, Burch, McClenning, Waite, Jenkins, and

Livermore violated his constitutional rights under the Eighth and Fourteenth Amendment to be

free from excessive force and cruel and unusual punishment. (Dkt. No. 1, at ¶¶ 83-88 [Compl.].)

More specifically, Plaintiff alleges that Defendants Frazier, Scholgl, Beecher, Morin, Burch,

McClenning, Waite, and Jenkins assaulted him, and that Defendant Livermore both failed to intervene and affirmatively participated in the assault.  (*Id.*)  Second, Plaintiff alleges that Defendants Frazier, Schlogl, Beecher, Morin, Burch, McClenning, Waite, Jenkins, and Livermore violated his constitutional rights under the First Amendment to be free from retaliation for practicing his religion and speaking about unconstitutional acts committed against him.  (*Id.* at ¶¶ 89-93.)  Third, Plaintiff alleges that Defendants Goodman, Kelly, and Racette violated his right under the Eighth Amendment to be free from cruel and unusual punishment by (a) failing to implement or enforce appropriate policies to stop and prevent such violations, (b) failing to adequately supervise or train subordinates, and (c) failing to take any actions to remedy reported violations. (*Id.* at ¶¶ 94-105.)

### B.    Undisputed Material Facts on Plaintiff's Motion for Summary Judgment

The following facts were asserted and supported with accurate record citations by Plaintiff in his Statement of Material Facts and expressly admitted by Defendants in their response thereto or denied without appropriate record citations.  (*Compare* Dkt. No. 126, Attach. 9 [Pl.'s Rule 7.1 Statement] *with* Dkt. No. 131, Attach. 1 [Defs.' Rule 7.1 Resp.].)

1.    Plaintiff commenced this action under 42 U.S.C. § 1983 in the Northern District of New York on November 12, 2014.

2.    Defendants Burch, Beecher, and McClenning answered on September 2, 2015.

3.    In their Answer, Defendants Burch, Beecher, and McClenning asserted counterclaims against Plaintiff for State law assault and battery.

4.    These counterclaims are alleged to have arisen from events occurring in the draft process area of GMCF on November 15, 2011.

3

5.      The counterclaims are not alleged to have arisen from events occurring on any date other than November 15, 2011.

6.      Defendant Beecher claims that he has not seen Plaintiff since November 15, 2011.

7.      Defendant Burch claims that the only time he interacted with Plaintiff was on November 15, 2011.

8.      Defendant McClenning claims that the only time he saw or interacted with Plaintiff was on November 15, 2011.

9.      Defendants' counterclaims were brought on September 2, 2015, which is more than one year after November 15, 2011.

10.     Plaintiff answered these counterclaims on September 24, 2015, and asserted an affirmative defense that one or more of the counterclaims were barred by the statute of limitations.

**C.      Undisputed Material Facts on Defendants Goodman, Kelly, Waite, and Jenkins' Motion for Summary Judgment**

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts and expressly admitted by Plaintiff in his response thereto or denied without appropriate record citations.  (*Compare* Dkt. No. 127, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 132, Attach. 10 [Pl.'s Rule 7.1 Resp.].)

1.      Plaintiff commenced this action on November 12, 2014.  With regard to Defendants Goodman, Kelly, Waite, and Jenkins, the Complaint alleges as follows:

(a)     In June 2011, Plaintiff complained in writing to Defendant Kelly, who was the Deputy Superintendent for Security at GMCF, that corrections officers, including Defendant Waite, had been harassing him, threatening to dispose of his mail, and telling other inmates that he was a "rat."

(b)     Plaintiff believed that the officers were acting in retaliation for his earlier complaints.

(c)     This complaint to Defendant Kelly was ineffective.

(d)     In August 2011, staff refused to provide Plaintiff several religious meals, continued harassing him for his religious beliefs, and destroyed his copy of the Quran.

(e)     Around the same time, Defendant Waite assaulted him in an elevator by punching him.

(f)     In a written complaint submitted to GMCF Superintendent Racette in September 2011, Plaintiff claimed that corrections officers, including Defendant Jenkins, had threatened him, made anti-Islamic remarks, refused to provide him with his religious meals, threatened to take his mail, and assaulted him.

(g)     This complaint was also ineffective.

(h)     In September 2011, Defendant Jenkins again assaulted Plaintiff, shoving his face into the corner of an elevator, shoving his hands into Plaintiff's pants and grabbing his testicles, calling him a "piece of shit Muslim," and telling him to "go ahead and do something" so he could rip his "dick off."

(i)      Defendant Jenkins then put his finger in Plaintiff's anus, and told Plaintiff that "he better not leave his cell" or Defendant Jenkins or one of the "blue shirts" would "get" Plaintiff.

(j)      Plaintiff complained in writing to Defendant Kelly about this alleged incident and sent copies of the complaint to Racette and Defendant Goodman.

(k)      Shortly thereafter, Defendant Jenkins allegedly confronted Plaintiff and told him in a threatening manner that it was "not over."

(l)      Later in September 2011, Plaintiff complained in writing to Defendant Kelly about Defendant Jenkins' latest threat and sent copies of the complaint to Racette and Defendant Goodman.

(m)      Defendant Goodman responded to Plaintiff's letter in October 2011, stating that the complaint had been investigated and determined to be without merit, and that Plaintiff was interviewed by a supervisor and refused medical attention after the alleged assault.

(n)      In a letter to Racette, which was also sent to Defendants Kelly and Goodman, Plaintiff responded that he had neither been interviewed about the alleged assault nor called for a medical examination, and he requested that Defendant Jenkins and his associates leave him alone.

2.      Plaintiff testified at his deposition that the alleged incident relating to Defendant Waite occurred on August 23, 2011.

3.    Plaintiff wrote a letter to Racette dated September 2, 2011, in which Plaintiff, *inter alia*, claims that Defendant Waite had assaulted him on August 23, 2011.

4.    Plaintiff admitted at his deposition that the alleged incidents concerning Defendant Waite described in the September 2nd letter is the same incident described in the Complaint.

5.    Defendant Kelly testified at his deposition that he appears to have assigned Defendant Goodman to investigate the conduct alleged in Plaintiff's September 2nd letter.

6.    Defendant Kelly also testified that the individual to which he assigned an investigation "may send it down another level lower" for investigation.

7.    Indeed, Defendant Kelly testified that Defendant Goodman had the authority to delegate investigations to Defendant Goodman's subordinates, including Sergeants Scarlott and Williams, even though Defendant Kelly had initially assigned the investigations to Defendant Goodman.

8.    Defendant Goodman testified at his deposition that, in response to receiving this letter, he would have assigned a lieutenant to investigate it.

9.    Defendant Goodman wrote a memo to Plaintiff, dated October 14, 2011, with the subject line "your letter of complaint 9/2/11."

10.    Plaintiff admitted at his deposition that he received this memo.

11.    Defendant Goodman's October 14th memo states, in pertinent part, "Your complaint was investigated by a Security Supervisor," and concludes, "I find your complaint to be without merit."

12.     Plaintiff further testified at his deposition that the alleged incident relating to Defendant Jenkins occurred on September 12, 2011.

13.     Plaintiff wrote a letter to Defendant Kelly dated September 14, 2011, in which Plaintiff, *inter alia*, claims that Defendant Jenkins had assaulted Plaintiff on September 12, 2011.

14.     Plaintiff admitted at his deposition that this alleged incident concerning Defendant Jenkins described in the September 14th letter is the same incident described in the Complaint.

15.     The record shows that Defendant Kelly assigned Defendant Goodman to investigate the conduct alleged in Plaintiff's September 14th letter.

16.     Defendant Goodman then assigned this investigation to Sergeant T. Williams.

17.     Defendant Goodman wrote a memo to Plaintiff, dated October 5, 2011, with the subject line "Your letter of complaint 9/14/11."

18.     Defendant Goodman's October 5th memo states, in pertinent part, "Your letter of complaint written to DSS Kelly was received and investigated by a security supervisor. . . . Because of your lack of cooperation during this investigation, your refusal to be medically examined, and the evidence obtained. The complaint is without merit and therefore denied."

19.     In his Complaint, Plaintiff does not allege that Defendants Goodman, Kelly, Waite, and Jenkins were personally involved in the November 15, 2011, incident.[2]

---

[2]      Plaintiff objects to the extent that this statement suggests any legal (rather than factual) conclusions.  This statement is therefore admitted only to the extent it is a factual assertion.

8

20.    Plaintiff cannot recall filing any grievances relating to the alleged August 2011 incident concerning Defendant Waite.

21.    In addition, Plaintiff admitted at his deposition that he did not file a grievance relating to the alleged September 2011 incident concerning Defendant Jenkins.

22.    The issues raised by Plaintiff against Defendants Goodman, Kelly, Waite, and Jenkins are proper subjects for a grievance under New York Department of Corrections and Community Supervision ("DOCCS") grievance procedures as outlined at 7 N.Y.C.R.R. § 701.1 *et seq.*[3]

23.    Central Office Review Committee ("CORC") staff searched CORC's records for determinations upon grievance appeals brought by Plaintiff.[4]

24.    DOCCS records reflect that Plaintiff was incarcerated at GMCF during the time period pertaining to this action.

25.    During that time, GMCF had a fully functioning inmate grievance process available.[5]

---

[3]    *See, supra*, note 2 of this Decision and Order.

[4]    Plaintiff admits that the cited Declaration supports this statement but objects because he does not have personal knowledge of CORC staff's actions and because the statements were made in a declaration rather than a deposition or other proceeding where Plaintiff would have been able to question the declarant.  (Dkt. No. 132, Attach. 10, at ¶ 23 [Pl.'s Rule 7.1 Statement].)  However, because Plaintiff does not cite any evidence contradicting the statement, this fact is deemed admitted.  *Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315, 319 (S.D.N.Y. 2003) (holding that "the facts set forth in [plaintiff's] statement are deemed established" where defendant denied assertions in plaintiffs Rule 56.1 statement but declined to provide record citations in support).

[5]    *See, supra*, note 4 of this Decision and Order.

26.     Inmates at GMCF have had full access to CORC by which to appeal from facility-level grievance determinations.[6]

27.     Based on an examination of DOCCS records, Plaintiff has filed a number of grievance appeals with CORC; however, none of these appeals concern matters stemming from alleged incidents of harassment, assault, threats, retaliation, and religious discrimination during the period from June 2011 through October 2011.[7]

28.     Grievance No. GM-51889-11 (Case Code: "Staff Conduct"/Title: "Assaulted by Escort Officers") was filed on May 3, 2011, before the alleged events of June 2011 through October 2011.[8]

29.     Grievance No. FPT-25472-11 (Case Code: "Staff Conduct"/Title: "Assaulted at Great Meadow") was filed on November 22, 2011, after Plaintiff had been transferred to Five Points Correctional Facility.

---

[6]     *Id.*

[7]     Plaintiff denies this statement, but fails to cite evidence supporting his denial. The evidence cited by Plaintiff supports the fact that Plaintiff filed an appeal with CORC regarding the grievance of November 22, 2011, but does not contradict Defendant's statement that Plaintiff had not filed appeals regarding the alleged incidents occurring between June 2011 and October 2011.  This fact is therefore deemed admitted.  *Archie Comic Publ'ns, Inc.*, 258 F. Supp. 2d at 319.

[8]     Plaintiff denies this statement, arguing that the exhibit supporting this statement in Ms. Seguin's Declaration extends back to June 1, 2011.  (Dkt. No. 132, Attach. 10, at ¶ 28 [Pl.'s Rule 7.1 Resp.].)  However, Exhibit A to Ms. Seguin's Declaration does in fact contain the entry mentioned and cited by Defendants regarding a grievance filed on May 3, 2011.  (Dkt. No. 127, Attach. 7, at 2 [Seguin Decl.].)  Plaintiff's denial is therefore unsupported and this statement is deemed admitted.  *See Holtz v. Rockafeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001) (noting that "where the cited materials do not support the factual statement in the Statements, the Court is free to disregard the assertions").

30.    This grievance concerned an incident that occurred at GMCF on November 15, 2011, and did not allege that Defendants Kelly, Goodman, Waite, or Jenkins were in any way involved.[9]

## C.    Undisputed Material Facts on Defendants Beecher, Burch, and McClenning's Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts and expressly admitted by Plaintiff in his response thereto or denied without appropriate record citations.  (*Compare* Dkt. No. 128, Attach. 1 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 132, Attach. 11 [Pl.'s Rule 7.1 Resp.].)

1.    Plaintiff is an inmate in the custody of DOCCS, serving an indeterminate sentence of 18 to 21 years based upon his convictions for First Degree robbery, Second Degree assault, and two counts of Third Degree criminal possession of a weapon.

2.    Plaintiff was incarcerated at GMCF and housed in the Behavioral Health Unit ("BHU") from approximately April 2011 until the date of the alleged excessive force and retaliation claims on November 15, 2011.

3.    At his deposition, Plaintiff testified that, before November 15, 2011, he had no problems with Defendants Beecher, Burch, or McClenning.

4.    At his deposition, Plaintiff testified that, before November 15, 2011, he was familiar with Defendant Beecher only to the extent that he had seen him around the BHU on occasion as a relief officer.

---

[9]    *See, supra*, note 2 of this Decision and Order.

5.    Before November 15, 2011, Defendant Beecher was not familiar with Plaintiff, and had never interacted with him.

6.    At his deposition, Plaintiff testified that, before November 15, 2011, he was familiar with Defendant McClenning only to the extent that Plaintiff knew that Defendant McClenning was the regular officer who worked in the draft area at GMCF.

7.    At his deposition, Plaintiff testified that, before November 15, 2011, he was not familiar with Defendant Burch.

8.    At their depositions, Defendant Burch and Defendant McClenning testified that they did not know Plaintiff was Muslim.

9.    At his deposition, Plaintiff testified that, before November 15, 2011, he had never filed a complaint or grievance against Defendants Beecher, Burch, or McClenning.

10.    Plaintiff's grievance dated November 20, 2011, regarding the underlying November 15, 2011, incident at GMCF did not name Defendants Beecher, Burch, or McClenning, and did not include any claim of retaliation.[10]

11.    Although Plaintiff alleges various acts of retaliation at GMCF before November 15, 2011, based on his religion and the writing of complaints and grievances, Plaintiff fails to identify a single act of retaliation that involved Defendants Beecher, Burch, or McClenning.

---

[10]    *See, supra*, note 2 of this Decision and Order.

12.     At his deposition, Plaintiff testified that he did not know whether anyone

informed Defendant Burch or Defendant McClenning, or that either of them were

aware, that Plaintiff had filed any complaints or grievances against anyone at

GMCF.

13.     Plaintiff's sole allegations of retaliation against Defendants Beecher, Burch, and

McClenning occurred on November 15, 2011, after he was brought to the GMCF

draft area for a transfer from GMCF to another correctional facility.

14.     Specifically, Plaintiff alleges that, after he was escorted from the BHU to the draft

area by Defendant Morin, he was placed into a draft cell with Inmate Burkett,

who had also been housed in the BHU.

15.     Although Plaintiff alleges that Defendant Morin called Plaintiff a "rat" and told

Inmate Burkett that "this was his chance to beat [Plaintiff] and that corrections

officers would not see anything," and that, as Inmate Burkett threatened to attack

Plaintiff for being a "rat" and they argued in the cell, Plaintiff also alleges that a

corrections officer, "believed to be" Defendant McClenning, entered the cell and

grabbed Inmate Burkett by the collar, and that Defendant Burch entered the cell

and physically removed Plaintiff and placed him in a separate draft cell.[11]

---

[11]     Plaintiff admits this fact but asserts that Defendant Burch "grabbed [him], threw
him across the bullpen, [] kicked him" and "dragged him to another bullpen."  (Dkt. No. 132,
Attach. 11, at ¶ 18 [Pl.'s Rule 7.1 Resp.].)  However, to the extent that Plaintiff desired to set
forth additional material facts that he contends are in dispute, he was required by Local Rule
7.1(a)(3) to do so in separately numbered paragraphs. *See Johnson v. City of Troy*, 14-CV-0817,
2016 WL 5107124, at *8 n.12 (N.D.N.Y. Sept. 20, 2016) (Suddaby, C.J.).

16.     After Defendant Burch separated Plaintiff from Inmate Burkett and left Plaintiff's draft cell, Plaintiff alleges that Defendant Burch threatened Plaintiff to "keep running his mouth," called him an "Al Qaeda motherfucker," and told him that he better "forget what happened."[12]

17.     Plaintiff alleges that Defendant Beecher assaulted him after he arrived in the draft cell area, called Plaintiff out of his draft cell, remarked that "he remembered [him] from the BHU," and "commented that [Plaintiff] liked to write up officers and that he wrote up Defendant Jenkins."

18.     Plaintiff alleges that, thereafter various Defendants and unidentified officers assaulted him, and that, during the assault (other than unidentified officers and other non-moving Defendants), only Defendant Burch "yelled that he hated Muslims and would kill [Plaintiff] and spit on him."

19.     Plaintiff alleges that "upon information and belief," the assault of November 15, 2011, "was orchestrated as a final act of retaliation for his religion and for his grievances and complaints."

**D.     Parties' Briefing on the Pending Motions**

     **1.     Plaintiff's Motion for Partial Summary Judgment**

          **a.     Plaintiff's Memorandum of Law**

Generally, in his memorandum of law, Plaintiff argues that the counterclaims for assault and battery by Defendants Beecher, Burch, and McClenning should be dismissed because they are barred by the governing statute of limitations.  (Dkt. No. 126, Attach. 8, at 5-8 [Pl.'s Mem. of

---

[12]     *See, supra*, note 11 of this Decision and Order.

Law].)[13]  More specifically, Plaintiff argues that, because these counterclaims were brought

under state law, the applicable statute of limitations is New York's one-year statute of

limitations.  (*Id.* at 6.)  Accordingly, Plaintiff argues that Defendants were required to assert their

claims for assault and battery no later than November 15, 2012 (one year after the incident at

issue), but did not do so until September 2, 2015.  (*Id.*)  Plaintiff also argues that there is no basis

for tolling the statute of limitations on these claims. (*Id.* at 6-7.)

### b. Defendants' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, Defendants concede that New York's

one-year statute of limitations applies to their counterclaims, but argue that these counterclaims

are not time-barred based on federal and state civil procedure rules.  (Dkt. No. 131, at 4-6 [Defs.'

Opp'n Mem. of Law].)  More specifically, Defendants argue that their counterclaims were

compulsory because they arose out of the same transaction as did Plaintiff's claims, and that the

New York Civil Practice Law and Rules ("N.Y.C.P.L.R.") state that such related counterclaims

would not be barred even if they would have been barred at the time the Complaint was filed.

(*Id.* at 4-5.)

### 2. Defendants Goodman, Kelly, Waite, and Jenkins' Motion for Summary Judgment

#### a. Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants Goodman, Kelly, Waite, and

Jenkins make five arguments.  (Dkt. No. 127, Attach. 22, at 8-17 [Defs.' Mem. of Law].)  First,

Defendants argue that Plaintiff failed to exhaust his available administrative remedies before

---

[13]     Page citations refer to the page numbers used on CM/ECF rather than the actual
page numbers contained in the respective documents.

commencing the present action as required by the Prison Litigation Reform Act of 1995 ("PLRA"). (*Id.* at 8-11.) More specifically, Defendants argue that Plaintiff did not file any grievances related to the alleged violations of his rights during the period between June 2011 and October 2011, and that Plaintiff does not allege that any of these Defendants were involved in the incidents for which he did file grievances. (*Id.* at 10-11.) Defendants argue that Plaintiff's letters reporting the alleged conduct to Superintendent Racette and others do not satisfy the exhaustion requirement because there is no evidence that he appealed the responses related to any of these letters to CORC as required by DOCCS policies. (*Id.* at 11.)

Second, these Defendants argue that Plaintiff's claims against Defendants Waite and Jenkins are barred by the governing statute of limitations. (*Id.* at 12-13.) More specifically, Defendants argue that because the conduct Plaintiff reported occurred on August 23, 2011 (as to Defendant Waite), and on September 12, 2011 (as to Defendant Jenkins), Plaintiff was required to file claims against them by August 23, 2014, and September 12, 2014, respectively, based on the applicable three-year statute of limitations. (*Id.* at 12.) Defendants additionally argue that any instances of verbal threats or harassment after those dates would not serve to make Plaintiff's claims against these Defendants timely, and, even if they did, Plaintiff does not allege that any such incidents occurred after September 2011. (*Id.* at 12-13.)

Third, these Defendants argue that Plaintiff has not alleged or shown that Defendants Goodman and Kelly were personally involved in any of the alleged constitutional violations because they merely assigned their subordinates to investigate Plaintiff's allegations and relied on the conclusions of those subordinates. (*Id.* at 14-15.)

Fourth, these Defendants argue that, to the extent Plaintiff asserts claims for damages against these Defendants in their official capacities, those claims would be barred by the Eleventh Amendment.  (*Id.* at 15-16.)

Fifth, and finally, these Defendants argue that they are entitled to qualified immunity as a matter of law because their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  (*Id.* at 16-17.)

### b.    Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff makes five arguments.  (Dkt. No. 132, Attach. 9, at 8-20 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that the evidence shows that he properly exhausted his administrative remedies against Defendants Goodman, Kelly, and Jenkins under the PLRA.  (*Id.* at 8-10.)  Specifically, Plaintiff argues that (a) he timely filed a grievance related to the incident of November 15, 2011, (b) he was notified by Defendant Goodman on December 6, 2011, that the investigation into his grievance could not be completed until a pending investigation by the Inspector General was finished, (c) a subsequent response from the superintendent on December 12, 2011, reiterated the conclusion of Defendant Goodman's letter, (d) he appealed that response to CORC on December 16, 2011, and (e) CORC responded on April 25, 2012, upholding the decision to wait until the conclusion of the Inspector General's investigation.  (*Id.* at 9.)

Second, Plaintiff concedes that his claims against Defendant Waite are barred by the statute of limitations, but argues that his claims against Defendant Jenkins are not barred.  (*Id.* at 10-11.)  Specifically, Plaintiff argues that, although Defendant Jenkins did not directly participate in the incident on November 15, 2011, that attack was a continuation of the violations

he had been perpetrating against Plaintiff in the previous months based on the statements he alleges that Defendant Beecher made during the incident on November 15, 2011. (*Id.*) Plaintiff argues that, because the incident on November 15, 2011, was in part based on retaliation for his filing of grievances against Defendant Jenkins, Defendant Jenkins' actions were "a continuing wrong" that did not accrue until that date. (*Id.* at 11.)

Third, Plaintiff argues that Defendants Goodman and Kelly were personally involved in the incident of November 15, 2011, based on (a) their failure to remedy violations once they learned of them, (b) their failure to act on information that violations were occurring, (c) their failure to stop or change policies under which violations occurred, and (d) their gross negligence in training or supervising their subordinates who committed the violations. (*Id.* at 11-18.)

Fourth, Plaintiff argues that, because he did not assert any claims against these Defendants in their official capacity, Defendant's Eleventh Amendment argument is not applicable. (*Id.* at 18.)

Fifth, and finally, Plaintiff argues that these Defendants are not entitled to qualified immunity because the nature of the alleged violations of his rights was clearly established to be unconstitutional at the time that they were committed. (*Id.* at 19-20.) Plaintiff argues that the failure to meaningful supervise subordinate officers was also clearly established to be unconstitutional at the time of the alleged violations. (*Id.*)

### c.    Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants make three arguments. (Dkt. No. 136, at 3-7 [Defs.' Reply Mem. of Law].) First, Defendants argue that, even if Plaintiff can show that he exhausted his administrative remedies related to the incident on November 15,

2011, there is no evidence that he exhausted any of his claims related to incidents occurring before that date against these Defendants (who were not involved in the incident of November 15, 2011).  (*Id.* at 3-5.)  Defendants also argue that the Inspector General's report does not support Plaintiff's claims against these Defendants because that report concerned only the incident of November 15, 2011.  (*Id.* at 4-5.)

Second, Defendants argue that the continuing-violation doctrine does not apply to Plaintiff's claims against Defendant Jenkins because Defendant Jenkins' conduct and the incident of November 15, 2011, were separate occurrences.  (*Id.* at 5-6.)  Defendant also argues that, to the extent claims against Defendants Goodman and Kelly are based on time-barred incidents involving Defendants Waite and Jenkins, those claims are also time-barred.  (*Id.* at 6.)

Third, Defendants argue that the authorities that Plaintiff relies on to argue that Defendants Goodman and Kelly were personally involved in the alleged incidents are inapposite.  (*Id.* at 6-7.)  Specifically, Defendants argue that, unlike the defendants in the cases cited by Plaintiff, Defendants Goodman and Kelly did not directly participate in unconstitutional conduct nor were they on notice of actual unconstitutional conduct.  (*Id.*)  Defendants also argue that Plaintiff's reliance on cases discussing municipality liability is erroneous because there is a difference between supervisory liability and municipal liability for the purposes of failing to train or supervise.  (*Id.* at 7.)

### 3.    Defendants Beecher, Burch, and McClenning's Motion for Partial Summary Judgment

#### a.    Defendants' Memorandum of Law

Generally, in their memorandum of law, Defendants Beecher, Burch, and McClenning argue that Plaintiff has failed to establish a First Amendment retaliation claim against them.

19

(Dkt. No. 128, Attach. 11, at 9-11 [Defs.' Mem. of Law].)  Specifically, Defendants argue that they were not involved with Plaintiff or the subject of any grievances filed by him before November 15, 2011, and that there is no evidence that Defendants knew on November 15, 2011, that Plaintiff is a Muslim or that he had filed grievances against other corrections officers.  (*Id.* at 10.)  Defendants argue that, at the time of the incident. Plaintiff was engaged in a fight with Inmate Burkett and was creating a disturbance, actions that provided a legitimate reason for Defendants' actions in physically separating Plaintiff from Inmate Burkett and moving him to a different cell.  (*Id.*)  Defendants also argue that Plaintiff failed to state a conspiracy claim and provided no evidence that these Defendants conspired against him or otherwise agreed to retaliate against Plaintiff for his religion or previous grievances.  (*Id.* at 10-11.)

### b.    Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff argues that he sufficiently established a retaliation claim against these Defendants.  (Dkt. No. 132, Attach. 9, at 20-22 [Pl.'s Opp'n Mem. of Law].)  Specifically, Plaintiff argues that the Defendants' actions during the incident of November 15, 2011, were in retaliation for Plaintiff having previously filed grievances against corrections officers and for his religion.  (*Id.* at 21.)  Plaintiff also argues that Defendants' motion should be denied because there is a genuine dispute of material fact as to what statements Defendants made about their motive for the use of force and this evidence is key to determining retaliatory intent.  (*Id.* at 22.)

### c.    Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants argue that Plaintiff has failed to make any showing that Defendants had prior knowledge about Plaintiff's grievances or his

religion, or that their actions on November 15, 2011, were anything other than an effort to control Plaintiff's behavior in the draft area. (Dkt. No. 135, at 4-5 [Defs.' Reply Mem. of Law].)

## II.     GOVERNING LEGAL STANDARDS

### A.     Legal Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[14] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).

---

[14]     As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

**B.      Legal Standard Governing Exhaustion Under the PLRA**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.  The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In this regard, exhaustion serves two major purposes.  First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Woodford*, 548 U.S. at 89.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532.

In accordance with the PLRA, the New York State Department of Correctional Services ("DOCS") has made available a well-established inmate grievance program.  7 N.Y.C.R.R. § 701.7.  Generally, the DOCS Inmate Grievance Program ("IGP") involves the following three-

step procedure for the filing of grievances.  7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.[15]  <u>First</u>, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[16]  If a grievance complaint form is not readily available, a complaint may be submitted on plain paper.  A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue.  If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing.  Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision.  The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal.  Third, a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision.  CORC is to render a written decision within a certain number of days of receipt of the appeal.

Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees.  7 N.Y.C.R.R. § 701.8.  In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor.  The inmate then files a grievance under the normal procedures

---

[15]   *See also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. March 31, 2010) [citation omitted].

[16]   The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

23

outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review.  Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations.  An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure.  A similar "special" procedure is provided for claims of discrimination against an inmate.  7 N.Y.C.R.R. § 701.9.

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal.  *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. County of Orange*, 467 F.3d 170, 175 (2d Cir. 2006).  However, a plaintiff's failure to exhaust does not end the inquiry.  This is because certain exceptions exist to the exhaustion requirement.  In *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016), the Supreme Court rejected the "special circumstances" exception applied by many circuits, holding that "[c]ourts may not engraft an unwritten 'special circumstance' onto the PLRA's exhaustion requirement."  *Ross*, 136 S. Ct. at 1862; *see Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) ("[T]o the extent that our special circumstances exception established in *Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), and *Hemphill*, 380 F.3d at 689-91, permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, in fact, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*.") (emphasis in original).

24

Thus, "post-*Ross*, the lone surviving exception to the PLRA's exhaustion requirement is that embedded in its text: that an inmate need only exhaust those administrative remedies that are 'available' to him." *Mena v. City of New York*, 13-CV-2430, 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016) (citing *Ross*, 136 S. Ct. at 1862). To guide courts in this analysis, the Supreme Court has identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is not "available." *Ross*, 136 S. Ct. at 1859.

First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Third, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

## III.    ANALYSIS

### A.    Whether the State Law Counterclaims by Defendants Beecher, Burch, and McClenning Are Barred By the Statute of Limitations

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' opposition memorandum of law. (Dkt. No. 131, at 4-5 [Defs.' Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

In response to Plaintiff's argument that Defendants' counterclaims are time-barred, Defendants argue that N.Y.C.P.L.R. § 203(d) permits them to bring those counterclaims, which they assert are compulsory. (Dkt. No. 131, at 4-5 [Defs.' Opp'n Mem. of Law].) Rule 13(a) of the Federal Rules of Civil Procedure defines a compulsory counterclaim as any counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's

claim and does not require the presence of third parties of whom the court cannot acquire jurisdiction," and indicates that the answering party must state any compulsory counterclaim it has against the opposing party in its pleading.  Fed. R. Civ. P. 13(a).  Rule 13(a) does not state whether those compulsory counterclaims must be timely at the time they are asserted.  *Id.* However, N.Y.C.P.L.R. § 203(d) states that, if a counterclaim "arose from the same transactions, occurrences, or series of transactions or occurrences upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed." N.Y.C.P.L.R. § 203(d).  The language of Section 203(d) therefore indicates that a defendant would not be barred from asserting compulsory counterclaims in an action even if those counterclaims would otherwise be time-barred if brought in a separate action.  *See Curry v. Huntington Copper, LLC*, 12-CV-1673, 2014 WL 4828106, at *2 (N.D.N.Y. Sept. 29, 2014) (Hurd, J.) (noting that N.Y.C.P.L.R. § 203[d] "allows a defendant 'to assert an otherwise untimely claim which arose out of the same transactions alleged in the complaint'") (quoting *Carlson v. Zimmerman*, 882 N.Y.S.2d 139, 141 [N.Y. App. Div. 2009]).

Defendants' counterclaims are clearly compulsory according to Fed. R. Civ. P. 13(a) and N.Y.C.P.L.R. § 203(d), because they allege an assault and battery that occurred during the same physical altercation that is the basis for Plaintiff's claims against Defendants Beecher, Burch, and McClenning.  (Dkt. No. 1, at 8-14 [Compl.]; Dkt. No. 34, at 6-8 [Answer].)  Because, as Plaintiff acknowledges, these counterclaims are based in state law, and because they "arose from the same transactions, occurrences, or series of transactions or occurrences" as Plaintiff's claims, N.Y.C.P.L.R. § 203(d) indicates that Defendants are not barred from asserting these claims in

this action despite the fact that they would otherwise be untimely. *See Global Crossing Bandwidth, Inc. v. Locus Telecomm., Inc.,* 632 F. Supp. 2d 224, 247-48 (W.D.N.Y. 2009) (citing cases where federal courts applied Section 203[d] to state law claims, and finding that plaintiff was permitted to assert time-barred claims to offset defendant's counterclaims where the claims arose from the same transactions as the counterclaims); *Am. Stock Exch., LLC v. Mopex, Inc.*, 230 F. Supp. 2d 333, 335 (S.D.N.Y. 2002) (noting that defendant could have asserted relevant claims pursuant to Section 203[d] at the time it filed its original answer and counterclaims even if those claims were otherwise time-barred, but could not do so in an amended answer). Plaintiff's motion for partial summary judgment is therefore denied.

### B.    Whether Plaintiff Exhausted His Available Administrative Remedies as to the Claims Against Defendants Goodman, Kelly, Waite, and Jenkins

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 127, Attach. 22, at 8-11 [Defs.' Mem. of Law]; Dkt. No. 136, at 3-5 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

"The [PRLA] mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross*, 136 S.Ct. at 1854-55 (quoting 42 U.S.C. § 1997e[a]).  As discussed above in Part II.B. of this Decision and Order, the Supreme Court has therefore interpreted the Prison Litigation Reform Act to require exhaustion of administrative remedies in all circumstances so long as those remedies were actually available to the inmate.  *Ross*, 136 S.Ct. at 1856-58.  Additionally, the inmate must exhaust every claim he raises in a case before a federal court.  *See Moreau v. Peterson*, 672 F. App'x 119, 121 (2d Cir. 2017) (finding dismissal of four of six claims was proper because the plaintiff did not file

grievances on those four claims); *Shariff v. Coombe*, 655 F. Supp. 2d 274, 287-90 (S.D.N.Y.

2009) (noting that, "in order to maintain a claim in this action, each [p]laintiff must have

individually exhausted his administrative remedies with respect to that claim" and dismissing

claims for which there was no evidence that grievances had ever been filled related to those

specific claims); *Collins v. Goord*, 438 F. Supp. 2d 399, 413-14 (S.D.N.Y. 2006) (dismissing

some of the plaintiff's claims because he did not file grievances or appeal any grievances related

to those specific claims).   "Because failure to exhaust is an affirmative defense, . . . defendants

bear the initial burden of establishing, by pointing to 'legally sufficient sources' such as statutes,

regulations, or grievance procedures, that a grievance process exists and applies to the

underlying dispute." *Hubbs v. Suffolk Cnty. Sheriff's Dept.*, 788 F.3d 54, 59 (2d Cir. 2015)

(citations omitted).   "[O]nce a defendant has adduced reliable evidence that administrative

remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those

administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing

exhaustion [or] unavailability."   *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013)

(Suddaby, J.) (citation omitted).

Both parties agree that DOCCS has an applicable procedure for inmate grievances, which

is outlined in 7 NYCRR § 701.5.  (Dkt. No. 127, Attach. 22, at 9-10 [Defs.' Mem. of Law]; Dkt.

No. 132, Attach. 9, at 9 [Pl.'s Opp'n Mem. of Law].)  Additionally, Plaintiff does not allege that

the grievance procedure was unavailable to him for the relevant claims against Defendants

Goodman, Kelly, Waite, and Jenkins.  (Dkt. No. 132, Attach. 9, at 8-10 [Pl.'s Opp'n Mem. of

Law].)  Instead, Plaintiff argues that the grievance he filed regarding the incident on November

15, 2011, which he appealed to CORC, was sufficient to exhaust his administrative remedies.

The Court agrees with Defendants that whether Plaintiff exhausted his remedies regarding the incident on November 15, 2011, does not answer the question of whether Plaintiff exhausted his remedies regarding the claims asserted against Defendants Goodman, Kelly, Waite, and Jenkins.  (Dkt. No. 136, at 3-5 [Defs.' Reply Mem. of Law].)  In the grievance regarding the incident on November 15, 2011, Plaintiff alleges he was attacked and assaulted by unnamed corrections officers in the draft processing area at GMCF.  (Dkt. No. 127, Attach. 8, at 8.)  In his Complaint, Plaintiff identifies the officers involved in that incident as Defendants Morin, McClenning, Burch, Schlogl, Beecher, Frazier, and Livermore.  (Dkt. No. 1, at ¶¶ 43-67 [Compl.].)  Plaintiff never alleges that Defendants Goodman, Kelly, Waite, or Jenkins participated in the incident on November 15, 2011.  The specific mentioning of seven officers other than Defendants Goodman, Kelly, Waite, and Jenkins did not place DOCCS on reasonable notice of his claims against those four Defendants such that they could know of, and investigate, those claims.  The grievance regarding the incident on November 15, 2011, therefore does not provide evidence that Plaintiff exhausted his administrative remedies on his specific claims against Defendants Goodman, Kelly, Waite, and Jenkins.

Nor does the evidence substantiate that Plaintiff otherwise exhausted his administrative remedies against these Defendants.  The conduct that is the basis for Plaintiff's claims against these Defendants occurred before November 2011; however, a list of grievances from the DOCCS database shows only a grievance for assault by an escort officer filed on May 3, 2011, and a grievance related to mail on June 1, 2011.  (Dkt. No. 127, Attach. 7, at 2.)  However, even the filing of a grievance is not by itself sufficient to exhaust administrative remedies.  Rather, DOCCS policy requires an inmate to appeal a denial of his grievance, first to the superintendent,

and then to CORC.  7 NYCRR § 701.5.  In a declaration dated July 17, 2017, Rachel Seguin, the Assistant Director of the Inmate Grievance Program for DOCCS, stated that Plaintiff had filed appeals with CORC in the past, but that "none of these appeals concern matters stemming from alleged incidents of harassment, assault, threats, retaliation, and religious discrimination during the period from June 2011 through October 2011."  (Dkt. No. 127, Attach. 6, at 4-5 [Seguin Decl.].)  The evidence submitted by Plaintiff and Defendants does show that Plaintiff wrote letters to Superintendent Racette and Defendant Kelly regarding conduct by Defendants Waite and Jenkins in June and September 2011.  (Dkt. No. 132, Attach. 3, at 2; Dkt. No. 123, Attach. 4, at 2-3; Dkt. No. 127, Attach. 14, at 2-7; Dkt. No. 127, Attach. 17, at 2-4.)  However, even if these letters were to be construed as grievances (a finding that would be contrary to established law),[17] there is no evidence that Plaintiff appealed the responses (to any of these complaints) to CORC as required by 7 NYCRR § 701.5.   Notably, Plaintiff never attempts to argue as much, focusing instead solely on the appeals related to the incident on November 15, 2011.  (Dkt. No. 132, Attach. 9, at 9-10 [Pl.'s Opp'n Mem. of Law].)

Because Defendants met their initial burden to show that there was an applicable grievance procedure and that Plaintiff failed to avail himself of that procedure, Plaintiff had the burden of providing contrary evidence of exhaustion or unavailability.  However, Plaintiff has not provided evidence that he exhausted any claims related to conduct occurring before November 2011, or that the applicable grievance procedures were unavailable to him. Consequently, there is no genuine dispute of material fact as to whether Plaintiff failed to

---

[17]     *See Nelson v. Rodas*, 01-CV-7887, 2002 WL 31075804, at *3 (S.D.N.Y. Sept. 17, 2002) ("Courts have repeatedly held that complaint letters to the [DOCCS] Commissioner or the facility Superintendent do not satisfy the PRLA's exhaustion requirements.").

exhaust his administrative remedies with regard to any claim against Defendants Goodman, Kelly, Waite, and Jenkins.  Defendant's motion for summary judgment on this issue is therefore granted.[18]

### C.    Whether Plaintiff's Claims Against Defendants Waite and Jenkins Are Barred by the Statute of Limitations

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 127, at 12-13 [Defs.' Mem. of Law]; Dkt. No. 136, at 5-6 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

As discussed above in Part III.B. of this Decision and Order, Plaintiff failed to exhaust his administrative remedies as to any claims other than those related to the incident on November 15, 2011.  Consequently, Plaintiff is barred from asserting his claims against Defendants Waite or Jenkins for conduct occurring before the incident on November 15, 2011, regardless of whether those claims are also barred by the statute of limitations.  However, for the sake of thoroughness, the application of the statute of limitations (and the unavailability of the continuing-violation doctrine) will be discussed as an alternative basis for granting Defendants' motion for summary judgment on this issue.

---

[18]    Dismissal for failure to exhaust is ordinarily without prejudice to allow the plaintiff-prisoner a chance to exhaust his administrative remedies and refile the complaint. *Gizewski v. New York State Dept. of Corrs.*, 14-CV-0124, 2016 WL 3661434, at *14 (N.D.N.Y. July 5, 2016) (Suddaby, C.J.).  However, the Court finds that the claims against Defendants Goodman, Kelly, Waite, and Jenkins are alternatively invalid for other reasons (as will be discussed in Parts III.C. and III.D. of this Decision and Order), such as the statute of limitations and lack of personal involvement.  Because there is an alternative basis for dismissing the claims against these Defendants that cannot be overcome by allowing Plaintiff a chance to exhaust his administrative remedies, the dismissal is with prejudice.

For claims arising under Section 1983, the statute of limitations is determined by looking to the law of the state in which the cause of action arose, while the accrual date for the cause of action is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 385 (2007) (citations omitted). Under New York law, the statute of limitations for a Section 1983 action is three years. *Oakes v. Cooke*, 858 F. Supp. 330, 333 (N.D.N.Y. 1994) (McAvoy, J.) (citing N.Y.C.P.L.R. § 214; *Owens v. Okure*, 488 U.S. 235, 249 [1989]); *see also Green v. Deputy Superintendent*, 12-CV-0606, 2013 WL 1966383, at *3 (W.D.N.Y. May 7, 2013) ("Plaintiff is advised that the statute of limitations for actions filed under 42 U.S.C. § 1983 is three years."). Under federal law, "[a] [Section] 1983 claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Swergold v. Murray*, 667 F. App'x 342, 342-43 (2d Cir. 2016) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 [2d Cir. 2002]).

As an initial matter, Plaintiff concedes that the allegations of excessive use of force and retaliation against Defendant Waite are barred by the statute of limitations. (Dkt. No. 132, Attach. 9, at 10 [Pl.'s Opp'n Mem. of Law].) However, he argues that the allegations against Defendant Jenkins are not barred because, although Defendant Jenkins did not participate in the incident on November 15, 2011, that incident was a continuation of his previous alleged violations of Plaintiff's rights. (*Id.*) Because, as Defendants note, the last documented complaint about conduct by Defendant Jenkins occurred in September 2011, Plaintiff's Complaint of November 12, 2014, does not fall within the three-year statute of limitations. (Dkt. No. 127, Attach. 22, at 12 [Defs.' Mem. of Law].) The Court therefore must examine whether the incident on November 15, 2011, was a continuation of Defendant Jenkins' previous conduct such that the claim did not accrue until that date.

The continuing-violation doctrine applies to claims that are "composed of a series of separate acts that collectively constitute one unlawful . . . practice." *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004). "The continuing violation doctrine thus applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation[],' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (citing *Nat'l R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 [2002]).

Plaintiff's argument is unpersuasive. Defendant Jenkins did not participate in the incident on November 15, 2011, a fact that Plaintiff admits. (Dkt. No. 132, Attach. 9, at 10 [Pl.'s Opp'n Mem. of Law].) Nor does Plaintiff allege or provide any evidence that Defendant Jenkins suggested, persuaded, or in any way caused other Defendants to commit such actions. Plaintiff's theory of a continuing violation relies entirely on the alleged statements by participating Defendants regarding Plaintiff's complaints about Defendant Jenkins' conduct; however, even if true, those allegations do not establish that Defendant Jenkins was involved in the actions of those Defendants. The allegation that other Defendants assaulted Plaintiff in part in retaliation for his complaints against Defendant Jenkins does not mean that their actions can be imputed to Defendant Jenkins. Nor does the pattern of incidents that Plaintiff alleges leading up to, and including, the incident on November 15, 2011, suggest that these actions were "a single wrong" that accrued only after a "threshold amount of mistreatment," rather than discrete acts by different Defendants.

The only case Plaintiff cites in support of his argument is *Laureano v. Goord*, 06-CV-7845, 2007 WL 2826649 (S.D.N.Y. Aug. 31, 2007). (Dkt. No. 132, Attach. 9, at 10-11 [Pl.'s

Opp'n Mem. of Law].)  However, this case does not support applying the continuing-violation

doctrine to Defendant Jenkins' time-barred conduct.  In *Laureano*, the court found that the denial

of mental health treatment for an ongoing period of time constituted a continuing violation for

two reasons: (1) the fact "it would have been unreasonable to expect [plaintiff] [] to file suit the

first day he was denied mental health treatment, and then bring additional suits on each

subsequent day he was denied treatment, in order to preserve his right to have three full years to

bring a claim," and (2) the fact that, "because no one day in which he was denied treatment 'can

fairly or realistically be identified as the cause of significant harm, it seems proper to regard the

cumulative effect as actionable.'" *Laureano*, 2007 WL 2826649, at *4 (citations omitted).

Unlike the ongoing failure to provide mental health treatment in *Laureano*, the alleged violations

of Plaintiff's rights were discrete acts that each produced their own identifiable harm.  Therefore,

the discussion in *Laureano* supports this Court's finding that Defendant Jenkins' acts were not

part of a continuing violation culminating in the incident on November 15, 2011.  Because the

Court finds that the continuing-violation doctrine is not applicable and there is no genuine

dispute of material fact as to whether Defendant Jenkins was personally involved in the incident

of November 15, 2011, summary judgment is granted to Defendants Waite and Jenkins regarding

the time-barred claims Plaintiff asserts against them.

### D.    Whether Defendants Goodman and Kelly Were Personally Involved in the Alleged Violations

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendants' memorandum of law.  (Dkt. No. 127, Attach. 22 [Defs.' Mem.

of Law].)  To those reasons, the Court adds the following analysis.

"To establish the liability of a supervisory official under [Section] 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional violations." *Richardson v. Goord*, 346 F.3d 431, 435 (2d Cir. 2003) (citing *Green v. Bauvi*, 46 F.3d 189, 194 [2d Cir. 1995]).  The Second Circuit has identified five ways in which supervisory liability can be established: "(1) actual direct participation in the constitutional violation; (2) failure to remedy a wrong after being informed through a report or appeal; (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such policy or custom to continue; (4) grossly negligent supervision of subordinates who committed a violation; or (5) failure to act on information indicating that unconstitutional acts were occurring." *Richardson*, 346 F.3d at 435 (quoting *Hernandez v. Keane*, 341, F.3d 137, 145 [2d Cir. 2003]).

Plaintiff argues that Defendants Goodman and Kelly were personally involved in the violations committed by the other Defendants based on their (a) failure to remedy violations after learning of them, (b) failure to act on information that unconstitutional practices were occurring, (c) creation or continuance of policies or customs under which violations occurred, and (d) gross negligence in training or supervising the subordinate Defendants.  (Dkt. No. 132, Attach. 9, at 12 [Pl.'s Opp'n Mem. of Law].)

The majority of the evidence related to Defendants Goodman and Kelly is from incidents that occurred before November 15, 2011; and the letters related to those incidents are the focus of the narrative in Plaintiff's memorandum of law.  (Dkt. No. 132, Attach. 9, at 12-16 [Pl.'s Opp'n Mem. of Law].)  As discussed above in Part III.B. of this Decision and Order, Plaintiff did not exhaust any claims related to these incidents.  Consequently, to the extent that Plaintiff is asserting that Defendants Goodman and Kelly were personally involved in violations for

35

which he has not exhausted his administrative remedies, he is barred from bringing those claims regardless of whether he can establish personal involvement.  Additionally, to the extent Plaintiff argues personal involvement in these specific incidents, those claims would also be barred by the statute of limitations, because all of these incidents occurred more than three years before the filing of the Complaint on November 12, 2014, and the continuing-violation doctrine is inapplicable.  (Dkt. No. 127, Attach. 22, at 15 [Defs.' Mem. of Law].)

With respect to the incident on November 15, 2011, the only evidence of personal involvement by either of these Defendants was a letter dated December 6, 2011, in which Defendant Goodman[19] indicated that an investigation into Plaintiff's grievance could not be completed until the Inspector General finished its investigation into the incident.[20]  (Dkt. No. 127, Attach. 8, at 10.)  Plaintiff has not adduced evidence that Defendant Goodman's involvement was anything greater than receiving Plaintiff's grievance and responding with a letter indicating that the incident had been referred to the Inspector General for investigation. This very limited role does not establish that Defendant Goodman was personally involved in the

---

[19]    Notably, Plaintiff does not allege that Defendant Kelly was involved at all in the incident on November 15, 2011.  In his deposition, Defendant Kelly states that he was away from GMCF on vacation beginning on November 7, 2011, and that he did not return to GMCF after that time.  (Dkt. No. 127, Attach. 11, at 91-92 [Kelly Decl.].)  There is no contrary evidence that Defendant Kelly was involved in Plaintiff's grievance related to the incident on November 15, 2011.  Consequently, there is no genuine dispute of material fact suggesting Defendant Kelly was personally involved in the incident on November 15, 2011.

[20]    In his deposition, Defendant Goodman stated that he first heard about the incident on November 15, 2011, on the radio as it was occurring, but did not personally respond because it was not his assigned area.  (Dkt. No. 127, Attach. 12, at 38-39 [Goodman Decl.].)  He later reviewed the watch commander's logbook which contained details of the incident.  (*Id.* at 38-41).  He also stated that he did not believe he saw photographs or video of Plaintiff after the incident, did not speak with the officers involved about the incident, and did not speak with the Inspector General about the incident.  (*Id.* at 41-47.)

incident on November 15, 2011.  *See Goris v. Breslin*, 402 F.App'x. 582, 584 (2d Cir. 2010)

(upholding a grant of summary judgment to defendant based on failure to establish personal

involvement where the defendant's involvement was limited to receipt of two letters from the

plaintiff, both of which were promptly referred to other individuals for investigation and

response); *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (upholding dismissal of a claim

against the Department of Corrections Commissioner for lack of personal involvement where

that defendant received two letters from the plaintiff, one of which [an appeal from an

administrative hearing] he referred to a different defendant for decision and the other of which [a

request for a status update] he responded to in order to inform plaintiff that a decision had been

made on the subject of the first letter); *McDay v. Bushey*, 14-CV-0997, 2016 WL 6638182, at *4

(N.D.N.Y. Aug. 10, 2016) (Baxter, M.J.) report and recommendation adopted by 2016 WL

6637969 (N.D.N.Y. Nov. 9, 2016) (Sharpe, J.) ("A supervisory official cannot be liable for a

constitutional violation merely because he received a grievance or complaint from an inmate and

referred the grievance to another individual for investigation.").

     Regarding Plaintiff's arguments that Defendants Goodman and Kelly failed to act on

information of violations and to remedy those violations, the Inspector General's report, dated

February 5, 2014, noted that (a) Defendants Frazier, Livermore, Burch, Scholgl, and Beecher

were issued Notices of Discipline related to the incident, (b) Defendants Frazier, Burch, and

McClenning were suspended without pay from November 22, 2011, through March 22, 2012, (c)

Defendant Livermore was suspended without pay from November 22, 2011, through February

14, 2012, and (d) Defendant Beecher was suspended without pay from January 11, 2012, through

July 10, 2012.  (Dkt. No. 136, Attach. 4, at 2-3.)  This report establishes that, even though

Defendant Goodman and Superintendent Racette decided to postpone investigation into the incident until the Inspector General completed their investigation, Plaintiff's complaints regarding the incident were not merely ignored, as the subordinate Defendants involved in the incident were subject to suspensions and sanctions.  This is directly contrary to Plaintiff's assertion that "none of the responsible subordinates were disciplined."  (Dkt. No. 132, Attach. 9, at 18 [Pl.'s Opp'n Mem. of Law].)  Plaintiff has not provided evidence sufficient to create a genuine dispute of material fact regarding whether the supervisors failed to remedy the violations that occurred on November 15, 2011, or failed to act on information that the incident had occurred.

Regarding Plaintiff's remaining arguments that Defendants Goodman and Kelly created or continued policies allowing violations of his rights and that they were grossly negligent in supervising the involved officers, Plaintiff offers no evidence to support such arguments in relation to the incident on November 15, 2011; his discussion of evidence in support of this argument is comprised of citations to incidents that were either not exhausted or are time-barred. (Dkt. No. 132, Attach. 9, at 12-16 [Pl.'s Opp'n Mem. of Law].)  Plaintiff fails to adduce evidence that would create a dispute of material fact as to whether there was any policy or custom that facilitated the violation of constitutional rights, nor does he even suggest what the alleged policy or custom was other than to state that the multiple alleged violations (including time-barred incidents) indicate a "culture at [GMCF] [] where officers knew they could harm and retaliate against inmates with impunity."  (*Id.* at 17).  *See also Case v. City of New York*, 233 F. Supp. 3d 372, 400 (S.D.N.Y. 2017) (granting motion to dismiss on failure to show personal involvement where the complaint merely alleged that the defendant had a "central role" in

"designing and implementing" policies that facilitated constitutional violations); *Richardson v. Dept. of Corr.*, 10-CV-6137, 2011 WL 710617, at *3 (S.D.N.Y. Feb. 28, 2011) (finding that conclusory allegations that a supervisory defendant "was responsible for implementing" rules that allegedly permitted unconstitutional practices was insufficient to establish personal involvement); *Loeber v. Cnty. of Albany*, 216 F. Supp. 2d 20, 24 (N.D.N.Y. 2002) (Hurd, J.) (dismissing claim for no personal involvement where the plaintiff did not claim that the defendant was involved in the events that were the basis of the alleged violations).

Similarly, Plaintiff fails to cite evidence that would support his argument that Defendants Goodman or Kelly were grossly negligent in supervising the relevant Defendants. The Second Circuit has noted that gross negligence is "'the kind of conduct where the defendant has reason to know of facts creating a high degree of risk of . . . harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.'" *Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014) (quoting *Poe v. Leonard*, 282 F.3d 123, 140 n.14, 146 [2d Cir. 2002]). The Second Circuit further stated that "[t]he standard for gross negligence is satisfied where the plaintiff establishes that the defendant-supervisor was aware of a subordinate's prior substantial misconduct but failed to take appropriate action to prevent similar misconduct." *Raspardo*, 770 F.3d at 117 (citations omitted). In this case, Plaintiff has not provided any evidence establishing that Defendants Goodman or Kelly were aware of any prior misconduct by the Defendants involved in the incident on November 15, 2011, much less substantial misconduct. Even if this Court considers the complaints for time-barred incidents that involved Defendants Waite and Jenkins, Defendants Goodman and Kelly both testified at their depositions that their process was to review the findings of investigations conducted into those incidents by subordinates and

determine whether the investigation had been complete.  (Dkt. No. 127, Attach. 11, at 15-16 [Kelly Decl.]; Dkt. No. 127 Attach. 12, at 30-33 [Goodman Decl.].)  Because the uncontroverted record evidence establishes that the results of these investigations supported a finding that Plaintiff's allegations were unsubstantiated, these incidents do not serve as evidence that any of the Defendants were engaged in substantial misconduct that would suggest Defendants Goodman and Kelly were grossly negligent in failing to act.  Plaintiff has therefore failed to raise a genuine dispute of material fact as to whether Defendants Goodman and Kelly were grossly negligent in supervising the subordinate Defendants.

Because there is no genuine dispute of material fact regarding the absence of personal involvement of Defendants Goodman and Kelly in the incident on November 15, 2011, summary judgment is granted to Defendants Goodman and Kelly on this issue.

**E.      Whether Defendants Goodman, Kelly, Waite, and Jenkins Are Immune from Suit Based on the Eleventh Amendment and the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the negative for the following two reasons.

First, Defendant argues that Plaintiff's claims against Defendants Goodman, Kelly, Waite, and Jenkins are barred by the Eleventh Amendment to the extent that they are asserted against these Defendants in their official capacities.  (Dkt. No. 127, Attach. 22, at 15-16 [Defs.' Mem. of Law].)  "The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."  *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 [1985]).  However, as Plaintiff argues, there is no indication that

he brought his claims against these Defendants in their official capacity (i.e., against the State of New York) rather than in their personal capacities.  (Dkt. No. 132, Attach. 9, at 18 [Pl.'s Opp'n Mem. of Law].); *see also Hoit v. Capital Dist. Transp. Auth.*, 15-CV-0134, 2016 WL 3947613, at *16 (N.D.N.Y. July 19, 2016) (Suddaby, C.J.).  Consequently, the Eleventh Amendment is not applicable to this case.

Second, these Defendants argue that they are entitled to qualified immunity.  (Dkt. No. 127, Attach. 22, at 16-17 [Defs.' Mem. of Law].)  "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 [2001]).  "'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'"  *Hope*, 536 U.S. at 737 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 [1986]).  The Supreme Court has defined "unnecessary and wanton inflictions of pain" as "those that are 'totally without penological justification.'"  *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 [1981]).  Once a violation has been established, a defendant may still be shielded from liability "if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Id.* at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 [1982]).  "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he was doing violates that right.'"  *Id.*

The question of whether these Defendants are entitled to qualified immunity is moot in light of the Court's findings that Plaintiff failed to exhaust his claims against them and that the claims against these Defendants are largely barred by the statute of limitations.  To the extent

that Plaintiff's claims against Defendants Goodman or Kelly are related to the incident on

November 15, 2011, these Defendants were not personally involved in that incident and

therefore Plaintiff cannot sustain claims against them regardless of whether they are entitled to

qualified immunity.[21]  Defendants' motion on this issue is therefore denied as moot.

> **F.    Whether Plaintiff Stated a Sufficient Claim of First Amendment Retaliation Against Defendants Beecher, Burch, and McClenning**

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 132, Attach. 9, at

20-22 [Pl.'s Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

"In order to state a claim for retaliation in violation of the First Amendment, a plaintiff

must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took

adverse action against the plaintiff, and (3) that there was a causal connection between the

protected speech and the adverse action.'"  *Gonzalez*, 802 F.3d at 222 (quoting *Garcia v. SUNY

Health Scis. Ctr.,* 280 F.3d 98, 106-07 [2d Cir. 2001]).  "'In order to succeed on a retaliation

claim, a plaintiff must establish that he engaged in protected conduct and that the protected

conduct was a substantial or motivating factor in the prison officials' decision to discipline

him.'"  *Seymore v. Joslyn*, 06-CV-1010, 2009 WL 995620, at *3 (N.D.N.Y. Apr. 14, 2009)

(Strom, J.).

Defendants argue that there is no evidence that they knew about Plaintiff's religion or his

claims against other officers before November 15, 2011, and that their actions should not be

---

[21]    Defendants Beecher, Burch, and McClenning have not sought summary judgment on the basis of qualified immunity.  In any event, without deciding the issue, the Court observes that, based on the legal standards outlined above and the evidence presented with the motions, it would not appear that summary judgment would be appropriate as to those Defendants.

construed as retaliatory because they had a legitimate purpose for using force against Plaintiff: Plaintiff's threatening and antagonistic behavior and disregard for the Defendants' orders necessitated physically removing him to another cell.  (Dkt. No. 128, Attach. 11, at 9-11 [Defs.' Mem. of Law]; Dkt. No. 135, at 4-5 [Defs.' Reply Mem. of Law].)  However, Plaintiff argues that Defendants Beecher, Burch, and McClenning retaliated against him through their actions on November 15, 2011, because of both the his practice of his religion and his filing of grievances against other corrections officers, notably Defendant Jenkins. (Dkt. No. 132, Attach. 9, at 20-22 [Pl.'s Opp'n Mem. of Law].)  Plaintiff cites his own deposition, in which he testified that, on November 15, 2011, Defendant Burch had made comments expressing his dislike for Muslims, and that both Defendant Beecher and Defendant Burch made comments indicating they were aware of the complaints Plaintiff had filed against other corrections officers.  (*Id.* at 21.)  The temporal proximity between protected activity and adverse action, and the statements made by a defendant regarding his motivation may be factors in determining the existence of a causal connection between a prisoner's protected activity and an adverse action.  *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002).  Because of the admissible record evidence adduced by Plaintiff, the Court finds that he has created a genuine dispute of material fact as to whetherDefendants took adverse action against him because of Plaintiff's protected activity. Defendants' motion for summary judgment on this issue is denied.

   **ACCORDINGLY**, it is

   **ORDERED** that Plaintiff's motion for summary judgment against the counterclaims of Defendants Beecher, Burch, and McClenning (Dkt. No. 126) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendants Goodman, Kelly, Waite, and Jenkins' motion for summary judgment (Dkt. No. 127) is **GRANTED in part** and **DENIED in part** such that the following claims are **DISMISSED**:

(a)     Plaintiff's First Cause of Action for excessive use of force as against Defendants Waite and Jenkins;

(b)     Plaintiff's Second Cause of Action for retaliation as against Defendants Waite and Jenkins;

(c)     Plaintiff's Third Cause of Action against Defendants Kelly and Goodman; and it is further

**ORDERED** that Defendants Beecher, Burch, and McClenning's motion for partial summary judgment (Dkt. No. 128) is **DENIED**; and it is further

**ORDERED** that **SURVIVING** these motions for summary judgment are the following claims:

(a)     Plaintiff's First Cause of Action for excessive use of force as against Defendants Frazier, Beecher, Burch, Morin, and McClenning;

(b)     Plaintiff's First Cause of Action for failure to intervene during the excessive use of force as against Defendant Livermore;

(c)     Plaintiff's Second Cause of Action for retaliation as against Defendants Frazier, Beecher, Burch, Morin, McClenning, and Livermore; and

(d)     Defendants Beecher, Burch, and McClenning's counter-claims for assault and battery; and it is further

**ORDERED** that counsel are direct to appear on **January 16, 2018 at 1:30 pm** in Syracuse, NY, in chambers for a pretrial conference, at which time counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time to begin on **February 26, 2018** with pretrial submissions being due on **February 5, 2018.** Plaintiff is further directed to forward a written settlement demand to Defendants no later than **January 2, 2018**, and the parties are directed to engage in meaningful settlement negotiations before the conference.  In the event that counsel feel settlement is unlikely, counsel may file a letter request at least one week before the scheduled conference advising that settlement is not feasible, and the Court will cancel the conference and issue a trial order scheduling trial for February 26, 2018.

Dated: December 15, 2017
      Syracuse, NY

Hon. Glenn T. Suddaby
Chief U.S. District Judge